THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAMON E. FITZGERALD, | ) | |
| | ) | |
| Plaintiff, | ) | 8:16CV101 |
| | ) | |
| V. | ) | |
| | ) | |
| NEBRASKA DEPARTMENT OF | ) | **MEMORANDUM AND ORDER** |
| CORRECTIONAL SERVICES, | ) | |
| SCOTT FRAKES, FRANK | ) | |
| HOPKINS, DIANE SABATKA-RINE, | ) | |
| RICHARD CRUICKSHANK, APRIL | ) | |
| JUNE-BULLINGS, JILL KUBICEK, | ) | |
| ROBERT MADSEN, JASON HURT, | ) | |
| BRANDON NOORDHOEK, | ) | |
| MATTHEW TRACY, sued in their | ) | |
| official and individual capacities, and | ) | |
| WILLIAM HENDRICKS, sued in his | ) | |
| individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, who is currently incarcerated at Tecumseh State Prison,[1] filed his Complaint on March 2, 2016. (Filing No. 1.) Plaintiff was given leave to proceed in forma pauperis. (Filing No. 6.) Therefore, at this time, the court will conduct an initial review of Plaintiff's claims to determine whether summary dismissal is appropriate under 28 U.S.C. § 1915(e)(2).

---

[1] At all times relevant to Plaintiff's Complaint, he was incarcerated at the Nebraska State Penitentiary.

## I. SUMMARY OF COMPLAINT

Plaintiff names the Nebraska Department of Correctional Services ("NDCS") and several NDCS officials as defendants. The NDCS officials are named in their official and individual capacities. Plaintiff seeks declaratory, injunctive, and monetary relief.

Plaintiff's Complaint seemingly sets forth four claims. First, Plaintiff maintains that his Eighth Amendment rights were violated due to poor living conditions at Nebraska State Penitentiary ("NSP"). Second, Plaintiff contends that his right to privacy was violated by female guards' and other inmates' observation of him in the shower. Third, Plaintiff asserts that his equal protection rights were violated because he was treated differently from inmates housed in other prison facilities. Finally, Plaintiff contends that he was denied access to the courts because the prison library lacked adequate materials and he was forced to mail correspondence by regular, as opposed to inter-office, mail.

## II. STANDARDS ON INITIAL REVIEW

The court is required to review prisoner and in forma pauperis complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. *See* 28 U.S.C. §§ 1915(e) and 1915A. The court must dismiss a complaint or any portion of it that states a frivolous or malicious claim, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A(b).

Pro se plaintiffs must set forth enough factual allegations to "nudge[] their claims across the line from conceivable to plausible," or "their complaint must be dismissed." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 569-70 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). However, "[a] pro se complaint must be liberally construed, and pro se litigants are held to a lesser pleading standard than other parties." *Topchian*, 760 F.3d at 849 (internal quotation marks and citations omitted).

Liberally construed, Plaintiff alleges federal constitutional claims. To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the United States Constitution or created by federal statute and also must show that the alleged deprivation was caused by conduct of a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993).

### III. DISCUSSION

1. **Claims Against the Nebraska Department of Corrections, Official Capacity Claims, and Request for Injunctive Relief**

The Eleventh Amendment bars claims for damages by private parties against a state, state instrumentalities, and an employee of a state sued in the employee's official capacity. *See, e.g., Egerdahl v. Hibbing Cmty. Coll.*, 72 F.3d 615, 619 (8th Cir. 1995); *Dover Elevator Co. v. Arkansas State Univ.*, 64 F.3d 442, 446-47 (8th Cir. 1995). Any award of retroactive monetary relief payable by the state, including for back pay or damages, is proscribed by the Eleventh Amendment absent a waiver of immunity by the state or an override of immunity by Congress. *See, e.g., id.*; *Nevels*

3

*v. Hanlon*, 656 F.2d 372, 377-78 (8th Cir. 1981). Sovereign immunity does not, however, bar damages claims against state officials acting in their personal capacities, nor does it bar claims brought pursuant to 42 U.S.C. §1983 that seek equitable relief from state employee defendants acting in their official capacity.

Here, Plaintiff seeks monetary damages against the Nebraska Department of Corrections. This claim is barred by the Eleventh Amendment. Likewise, Plaintiff's claims for monetary relief against the employee defendants in their official capacities are precluded.

Plaintiff also seeks injunctive relief against the individual defendants in their official capacities. Although this type of claim is generally permissible under the Eleventh Amendment, it fails under the circumstances presented here. At all times relevant to the Complaint, Plaintiff was housed in the "Control Unit" at NSP. However, Plaintiff now resides at Tecumseh State Prison. Therefore, to the extent Plaintiff seeks injunctive relief to improve the living conditions at NSP, his claims are moot. *See Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) ("[A] prisoner's claim for injunctive relief to improve prison conditions is moot if he or she is no longer subject to those conditions").

### 2. Conditions of Confinement

The Eighth Amendment requires that prison officials "provide humane conditions of confinement," specifically, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation omitted). In order to establish an Eighth Amendment violation regarding conditions of confinement, an inmate must establish: (1) that he is incarcerated under conditions posing a substantial risk of serious harm, and (2) the defendants actually knew of, but disregarded, or were deliberately indifferent to, the

plaintiff's health or safety. *Beaulieau v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012).

Plaintiff alleges that the living conditions in the NSP Control Unit were unsafe, unsanitary, and unhealthy. Plaintiff claims that the structural integrity of the NSP's Control Unit was compromised and exposed inmates to water and slippery conditions. Plaintiff maintains that cracks in the building caused an accumulation of mold, mildew, and bacteria, which could result in inmates developing diseases. Plaintiff further asserts that the ventilation system was poor and that drinking water was polluted due to unsanitary conditions. Moreover, Plaintiff complains that the cells in the NSP Control Unit did not have chairs or tables for inmates.

The court is doubtful that the prison conditions at NSP pose a substantial risk of serious harm. However, even assuming that the conditions could be classified as serious, Plaintiff has not successfully alleged that Defendants were deliberately indifferent to his personal health or safety. *See Martin*, 780 F.2d at 1337 (8th Cir. 1985) ("A prisoner cannot bring claims on behalf of other prisoners. A prisoner must allege a personal loss").

To the contrary, the allegations in the Complaint reveal that Defendants were more than responsive to the multiple grievances filed by Plaintiff and that Defendants sought to remedy or address the purported unsatisfactory conditions. For instance, Plaintiff alleges in his Complaint that in response to one of his grievances, Defendant Diane Sabatka-Rine responded as follows:

> [A]dministrative staff at NSP has previously correctly advised you that both the Health Department and Fire Marshall regularly conduct inspections at NSP. Construction/Maintenance personnel confirm that there have been problems with the Control Unit roof leaking. NSP staff has notified Maintenance staff of the leaks so they can be repaired. All cracks were filled and repaired during the past month. NSP staff is monitoring this issue and will inform Maintenance staff if there are any

> additional cracks. The cracks you describe are normal when a building settles. There is no indication that the cracks you refer to have structurally compromised the building. Hard water/corrosion can be cleaned on a regular basis to prevent build up. Maintenance staff cleaned all air/ducts vents and filters during October 2015. The dampers have been adjusted to help compensate for the fluctuation in outside temperatures experienced this time of year. There is a flat surface at the foot of your bunk that can be used for a writing surface.

(Filing No. 1 at CM/ECF pp. 5-6.) Plaintiff also admits that Defendant Brandon Noordhoek informed him that a work order was submitted for repair of the roof. (Filing No. 1 at CM/ECF p. 4.) In short, the allegations in the Complaint reveal that Defendants were not deliberately indifferent to Plaintiff's health or safety.

### 3. Equal Protection

Plaintiff asserts that his equal protection rights were violated because the NSP Control Unit did not have desks and chairs, while inmates in other NDCS facilities had these items. Plaintiff further complains that he did not have access to the same legal materials as are available at other prison facilities. Plaintiff's allegations fail to state a cognizable equal protection claim.

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger v. Department of Corrections*, 31 F.3d 727, 731 (8th Cir. 1994). "Dissimilar treatment of dissimilarly situated persons does not violate equal protection." *Id*. "Thus the first step in an equal protection case is determining whether the plaintiff has demonstrated that [he] was treated differently than others who were similarly situated to [him]. Absent a threshold showing that [he] is similarly situated to those who allegedly receive favorable treatment, the plaintiff does not have a viable equal protection claim." *Id*.

6

Here, Plaintiff alleges dissimilar treatment, but does not allege he was subject to adverse treatment based on some constitutionally impermissible reason. Rather, Plaintiff simply alleges that he did not have access to the same things as inmates residing in other prison facilities. "[M]ere differential treatment of similarly situated inmates, without more, fails to allege a violation of the Equal Protection Clause." *McKensie v. Alabama Department of Corrections*, No. 2:11-CV-97-ID, 2011 WL 1004875, *1 (M.D. Ala. Feb. 24, 2011). Therefore, Plaintiff has failed to state a viable equal protection claim.

### 4. Access to the Courts

Plaintiff claims he was denied access to the courts because (1) the law library at NSP did not contain certain reference materials or a typewriter and (2) he was forced to use regular mail, rather than inter-office mail. In *Lewis v. Casey*, 518 U.S. 343, 351 (1996), quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977), the Supreme Court confirmed that inmates have a constitutional right of access to the courts that obligates prison officials to provide some means, such as a prison law library or a legal assistance program, "for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" The "right of meaningful access to the courts ensures that prison officials may not erect unreasonable barriers to prevent prisoners from pursuing or defending all types of legal matters." *Schrier v. Halford*, 60 F.3d 1309, 1313 (8th Cir. 1995).

While "prisoners have a constitutional right of access to the courts," *Bounds*, 430 U.S. at 821, the right is only violated if the prisoner has suffered an "actual injury" by way of an official action that hindered his or her pursuit of a "nonfrivolous" or "arguable" underlying legal claim. *Lewis*, 518 U.S. at 353 & 353 n. 3.

Plaintiff has not alleged that any of the prison-officials erected any unreasonable barrier that prevented him from pursuing or defending a legal matter, or that he suffered an actual injury. In fact, Plaintiff's act of filing this lawsuit indicates

7

that he had access to writing materials and the courts. In light of these findings, the court concludes that Plaintiff has failed to allege sufficient facts to state an access to the courts claim.

### 5. Privacy Claim

Plaintiff also complains that the showers in the Control Unit did "not provide for privacy from direct and constant view of members of the opposite sex" and other inmates. (Filing No. 1 at CM/ECF p. 9.) He further claims that surveillance cameras provided a continuous view of the showers. (*Id.*) Plaintiff asserts that as a result of this surveillance, he suffered "indignation" and "mental anguish." (Filing No. 1 at CM/ECF p. 9.)

Prisoners do not lose all of their constitutional rights upon incarceration. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979). Prisoners are to "be accorded those rights not fundamentally inconsistent with imprisonment itself or incompatible with the objectives of incarceration." *Hudson v. Palmer*, 468 U.S. 517, 523 (1984). Therefore, when addressing an inmate's claim of alleged constitutional violations, courts "must consider whether the constrictions that prison administrators have placed on the inmate's rights are justified by legitimate institutional concerns." *Timm v. Gunter*, 917 F.2d 1093, 1099 (8th Cir. 1990).

In *Turner v. Safley*, 482 U.S. 78 (1987), the Supreme Court enunciated four factors helpful in evaluating whether a regulation is reasonably related to legitimate penological interests. These factors include (1) whether a valid, rational connection exists between the regulation and the penological interest offered to justify the regulation; (2) whether the inmate has an alternative means of protecting the right; (3) whether accommodation of the right would significantly impact prison resources; and (4) whether there is an obvious, simple alternative to the challenged regulation. *Id.* at 89-90.

The Eighth Circuit Court of Appeals previously addressed the issue of prisoners' right to privacy. In *Timm*, prisoners at NSP challenged, as violative of their privacy rights, prison policies that allowed female guards to *occasionally* view inmates in the showers. The Eighth Circuit noted that the surveillance techniques did not involve "constant, intrusive observation." *Id.* at 1101. Applying the factors set out in *Turner*, the Eighth Circuit concluded that "[w]hatever minimal intrusions on an inmate's privacy may result from such surveillance . . . are outweighed by institutional concerns for safety." *Timm*, 917 F.2d at 1102. See also *Robinson v. D.A. Boulier*, 121 F.3d 713 (8th Cir. 1997) (applying *Turner*, and finding that "institutional concerns for security and equal employment opportunities outweigh[ed] whatever minimal intrusion on [the plaintiff's] privacy that might result from surveillance [in the shower] by female officers").

In this case, Plaintiff alleges that females have a *direct* and *constant*, rather than occasional or minimal, view of the shower area. (Filing No. 1 at CM/ECF p. 9.) This allegation arguably makes the circumstances in this case distinguishable from those in *Timm*. Still, the court is extremely doubtful that this factual difference will ultimately result in a finding that Plaintiff's constitutional rights were violated.

Also, Plaintiff has not sufficiently alleged that Defendants personally participated in the violation of his privacy rights. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). The only individuals Plaintiff specifically references in connection with the shower surveillance issue are Sabatka-Rine, Noordhoek, and June-Bullings. With respect to Sabtaka-Rine and Noordhoek, Plaintiff only alleges that these defendants did not adequately respond to his grievances. However, "[a] denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." *Gallagher*, 587 F.3d at 1069. Plaintiff's only specific reference to June-Bullings is an allegation that she failed to thoroughly inspect the NSP Control Unit and inappropriately gave NSP a "successful completion rating in

light of the manner and conditions under which the plaintiff and inmates must shower." (Filing No. 1 at CM/ECF p. 15.) This conclusory allegation is insufficient to state a claim.

Out of an abundance of caution, the court will granted Plaintiff leave to file an amended complaint that states a claim upon which relief can be granted. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this action without further notice to Plaintiff.

Plaintiff should note, however, that the relief recoverable for any privacy violation is limited. The Prison Litigation and Reform Act prohibits a prisoner from receiving compensatory damages for mental or emotional distress if the plaintiff does not allege a physical injury. *See* 42 U.S.C. § 1997e(e). Because Plaintiff did not allege that he suffered a *physical* injury from the shower surveillance, he cannot recover compensatory damages. Moreover, as explained above, Plaintiff is precluded from obtaining injunctive relief, or recovering monetary damages for his official capacity claims. Therefore, in the unlikely event a constitutional violation is found, Plaintiff would be limited to recovering nominal and punitive damages against Defendants in their individual capacities. *See Royal v. Kautzky*, 375 F.3d 720 (8th Cir. 2004) (finding that nominal, punitive, injunctive, and declaratory relief are still available under the Prison Litigation Reform Act to a prisoner who does not sustain a physical injury).

IT IS THEREFORE ORDERED:

1. Plaintiff shall file an amended complaint by September 22, 2016, that states a claim upon which relief may be granted. Failure to file an amended complaint within the time specified by the court will result in the court dismissing this case without further notice to Plaintiff.

2. The clerk of the court is directed to set a pro se case management deadline using the following text: September 22, 2016 check for amended complaint.

DATED this 22nd day of August, 2016.

BY THE COURT:
s/ *Richard G. Kopf*
Senior United States District Judge